UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOSEPH MITCHELL                                    CIVIL ACTION

VERSUS                                                     NO. 24-1174

PRUDENTIAL INSURANCE                        SECTION "R" (3)
COMPANY OF AMERICA

## ORDER AND REASONS

Before the Court is defendant The Prudential Insurance Company of America's opposed[1] motion for summary judgment.[2]  The Court grants the motion.

## I.     BACKGROUND

This case arises out of plaintiff Joseph Mitchell's termination from the employment of The Prudential Insurance Company of America ("Prudential").  Plaintiff was terminated in August 2023.[3]  Plaintiff filed suit in May 2024, alleging that Prudential failed to provide him with reasonable accommodations for his disability, ADHD, and that Prudential terminated him because of his disability.[4]  Prudential filed this motion for summary

---

[1]     R. Doc. 66.
[2]     R. Doc. 43.
[3]     R. Doc. 43-3 at 17; R. Doc. 66-16 at 2.
[4]     R. Doc. 9 at 6.

judgment, arguing that it did provide plaintiff with reasonable accommodations and that plaintiff had a documented history of performance problems.[5]

The Court considers the motion below.

## II.    LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (first citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); and then citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The Court must draw all reasonable inferences in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory

---

[5]    R. Doc. 43.

facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075 (the moving party's "burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence" (citations omitted)). "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for resolution. *See, e.g., id.*

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party must put forth evidence that would "entitle it to a [judgment as a matter of law] if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991) (internal quotation marks omitted)). If it presents such evidence, "the nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

## III.  DISCUSSION

Mitchell worked as a Director, Sales Supervision and Oversight ("DSSO") in Prudential's Southern Territory, which is referred to as "NOR."[6] NOR has offices in Louisiana, Mississippi, and Alabama.[7]  In this role, plaintiff was generally responsible for maintaining regulatory compliance processes in the three offices.[8]  Prudential maintained policies and

---

[6]    R. Doc. 43-3 at 2; R. Doc. 66-16 at 1.
[7]    R. Doc. 43-3 at 3; R. Doc. 66-16 at 1.
[8]    R. Doc. 43-3 at 3; R. Doc. 66-16 at 1.

procedures, including internal reporting deadlines, to ensure adherence with the applicable regulations.[9]    Failure to comply with the applicable regulations could result in sanctions.[10]

In 2021, Plaintiff began to incur documented performance deficiencies.  Specifically, plaintiff missed six deadlines between February 2021 and June 2021.[11]  In some cases, plaintiff missed these deadlines despite being reminded of them and despite being granted an extension.[12]  These missed deadlines resulted in a verbal warning on July 1, 2021.[13]  The talking points in the verbal warning noted that the industry is heavily regulated, and appropriate notice and timeliness is necessary in order to meet all deadlines and regulatory commitments.[14]  It recommended that plaintiff take a time management course and informed plaintiff of Prudential's Employee Assistance Program.[15]  Additionally, it stated that if plaintiff's performance does not improve, additional action would be taken.[16]  Plaintiff's supervisor partnered plaintiff with a colleague to help plaintiff prioritize key work

---

[9]    R. Doc. 43-3 at 5–6; R. Doc. 66-16 at 1.
[10]    R. Doc. 43-3 at 6; R. Doc. 66-16 at 1.
[11]    R. Doc. 43-3 at 7–8; R. Doc. 66-16 at 1.
[12]    R. Doc. 43-4 at 375; *id.* at 385; *id.* at 389–390; *id.* at 392; R. Doc. 43-3 at 7–8; R. Doc. 66-16 at 1.
[13]    R. Doc. 43-4 at 392; R. Doc. 43-3 at 7–8; R. Doc. 66-16 at 1.
[14]    R. Doc. 43-4 at 392.
[15]    *Id.*
[16]    *Id.*; *see id.* at 394.

commitments and to meet with plaintiff weekly.[17]  Plaintiff's supervisor also met with plaintiff one-on-one weekly to help him with his performance, which was not something the supervisor did with other DSSOs he supervised.[18]

On February 8, 2022, plaintiff received his 2021 year-end review.[19] The review stated that plaintiff "had a challenging year meeting the requirements of the DSSO role" after "missing multiple important deadlines."[20]  It noted that although there "seemed to be some improvement" in plaintiff's performance, there were still times when plaintiff "had to be reminded of his obligations," and that he "requires more follow-up than a DSSO with his experience should need."[21]  It concluded that he "struggled to keep up with the volume [of work], is not responsive, and does not have a sense of urgency."[22]

Following his performance review, plaintiff received a written performance warning on February 10, 2022.[23]  The written performance

---

17    R. Doc. 43-3 at 8; R. Doc. 66-16 at 1.
18    R. Doc. 43-3 at 8; R. Doc. 66-16 at 1.
19    R. Doc. 43-3 at 8; R. Doc. 66-16 at 1.
20    R. Doc. 43-4 at 396.
21    *Id.*
22    *Id.*
23    *Id.* at 400−404; R. Doc. 43-3 at 9.  Plaintiff failed to note his opposition to defendant's statement of material facts, paragraphs 34 to 59.  *See* R. Doc. 66-16.  According to Local Rule 56.2, "[a]ll material facts in the

warning stated that on four prior occasions, plaintiff received feedback regarding deficiencies in his organizational and time management skills, which impacted his ability to meet deadlines.[24]  It noted that plaintiff should meet business deadlines and communicate with partners in a timely manner.[25]  It stated that if plaintiff's "performance d[id] not improve to a level that meets expectations, additional actions [would] be taken, up to and including the termination of [his] employment."[26]

On September 29, 2022, plaintiff experience an aortic dissection, underwent emergency surgery, and was hospitalized until October 4, 2022.[27]  Plaintiff took medical leave until December 22, 2022.[28]   Following his

---

moving party's statement [of material facts] will be deemed admitted, for purposes of the motion, unless controverted in the opponent's statement."  The Court holds that defendant's enumerated material facts numbered 34–59 are admitted, because plaintiff failed to controvert them in his opposition.  *See Jenkins v. Gulf Intermodal Servs., LLC*, 2024 WL 1467680, at *2 (E.D. La. Apr. 4, 2024) ("Plaintiffs' failure to contest any of the material facts enumerated in the Defendants' respective Local Rule 56.1 filings serves as an admission of those material facts."); *Doe v. Loyola Univ.*, 2020 WL 1030844, at *7 (E.D. La. Mar. 3, 2020) ("Because the plaintiff failed to controvert any of these facts (numbers 1 through 32, which is the entire statement of undisputed material facts), Local Rule 56.2 requires that they be deemed admitted.").

[24]  R. Doc. 43-4 at 402.
[25]  *Id.*
[26]  *Id.*
[27]  R. Doc. 43-3 at 10.
[28]  *Id.*

surgery, plaintiff was advised to discontinue taking stimulant medication to treat his ADHD given the potential side effects related to his blood pressure.[29]  On multiple occasions, plaintiff's supervisor encouraged plaintiff to request accommodations through Prudential's Integrated Disability Management Unit ("IDMU").[30]

On January 26, 2023, plaintiff received his 2022 year-end review.[31] The review stated that, for the first part of the year, plaintiff struggled to properly execute the responsibilities of the DSSO role.[32]  It stated that, in plaintiff's supervisor's opinion, if plaintiff's performance had not been addressed, the firm may have failed from a control perspective.[33]  After multiple visits from his supervisor, hands on management, and a new process to assist plaintiff, plaintiff's performance did improve as the year progressed.[34]

On February 22, 2023, plaintiff received a second written warning.[35] The warning provided that plaintiff was given feedback three times since his year-end review regarding deficiencies in his organizational and time

---

[29]  *Id.*
[30]  *Id.* at 10–11.
[31]  *Id.* at 10; R. Doc. 43-4 at 405.
[32]  R. Doc. 43-4 at 405.
[33]  *Id.*
[34]  *Id.*
[35]  *Id.* at 408; R. Doc. 43-3 at 11.

management skills that impacted his ability to meet deadlines.[36]  The warning outlined performance expectations going forward, including detailed timelines with which plaintiff was expected to comply.[37]  Again, the warning stated that if his performance did not improve, the company would take additional action, up to and including the termination of his employment.[38]

On March 26, 2023, plaintiff emailed Prudential's IDMU and requested accommodations for his ADHD, heart condition, anxiety, and depression.[39]  Plaintiff requested (1) assistance to help with the completion of lesser-priority job functions, (2) extra time to meet required work time deadlines, (3) the option to work remotely from home, and (4) designated times in which he is allowed to work uninterrupted.[40]  He stated that "[s]hould Prudential find that any of these accommodations are either unreasonable or unable to be implemented, [he] stand[s] ready to begin an open dialogue with the Company in determining what types of solutions may more effectively address [his] disabilities."[41]

---

[36]    R. Doc. 43-4 at 408.
[37]    *Id.*
[38]    *Id.*
[39]    R. Doc. 43-3 at 11–12; R. Doc. 43-6 at 2.
[40]    R. Doc. 43-3 at 12; R. Doc. 43-6 at 2.
[41]    R. Doc. 43-6 at 2.

A representative of Prudential's IDMU responded the next day, created an accommodation's request claim, and requested that plaintiff's medical provider fill out a specified form.[42]  Plaintiff returned the forms on April 20, 2023,[43] but the paperwork was not completed properly.[44]  Plaintiff submitted the correctly completed form on May 3, 2023,[45] and provided additional answers on May 9, 2023.[46]  The documentation provided by plaintiff's medical provider in support of plaintiff's request supported only one of plaintiff's requested accommodations, uninterrupted work time.[47]  A representative from IDMU called plaintiff on May 9 to discuss his disability further and clarify his accommodations request.[48]

On June 8, 2023, IDMU responded to plaintiff's request for accommodations.[49]  Regarding plaintiff's first requested accommodation for assistance with less-priority job functions, Prudential stated that plaintiff could assign lesser-priority work to the two support staff employees that reported to him and whom he oversaw.[50]  The letter requested that plaintiff

---

[42]   R. Doc. 43-3 at 12; R. Doc. 43-4 at 135.
[43]   R. Doc. 43-3 at 13; R. Doc. 43-4 at 148.
[44]   R. Doc. 43-3 at 13; R. Doc. 43-4 at 160.
[45]   R. Doc. 43-3 at 13; R. Doc. 43-4 at 164.
[46]   R. Doc. 43-3 at 13; R. Doc. 43-4 at 175.
[47]   R. Doc. 43-3 at 13; R. Doc. 66-16 at 1; R. Doc. 43-7 at 23.
[48]   R. Doc. 43-3 at 14; R. Doc. 66-16 at 1; R. Doc. 43-7 at 60–61.
[49]   R. Doc. 43-3 at 14; R. Doc. 66-16 at 1; R. Doc. 43-7 at 63.
[50]   R. Doc. 43-3 at 15; R. Doc. 66-16 at 1; R. Doc. 43-7 at 63.

make arrangements to speak with his supervisor to identify tasks that can be delegated.[51]  On plaintiff's second requested accommodation for extra time to meet deadlines, Prudential stated that the industry is highly regulated and many deadlines are established to ensure compliance with the regulatory required timeframes.[52]  It stated that "to the extent that on occasions [plaintiff] ha[s] a non-regulatory based deadline that [he] need[s] extra time to complete, [he] should reach out to [his supervisor] sufficiently prior to the expiration of that deadline to discuss a reasonable amount of additional time to complete the task."[53]  For plaintiff's third requested accommodation to be able to work remotely, Prudential noted that plaintiff was allowed to work from home three days a week already, and to the extent he may need to work from home more than that, he can ask his supervisor for permission to do so.[54]  It stated that his request "will be granted" to the extent it does not interfere with the business needs of the office on that particular day.[55] Finally, regarding plaintiff's fourth requested accommodation for designated uninterrupted working time, Prudential allowed plaintiff to block out reasonable periods of time during a workday, of less than two hours, when

---

[51]    R. Doc. 43-3 at 15; R. Doc. 66-16 at 1; R. Doc. 43-7 at 63.
[52]    R. Doc. 43-3 at 15; R. Doc. 66-16 at 1; R. Doc. 43-7 at 63.
[53]    R. Doc. 43-3 at 15; R. Doc. 66-16 at 1; R. Doc. 43-7 at 63–64.
[54]    R. Doc. 43-3 at 15; R. Doc. 66-16 at 2; R. Doc. 43-7 at 64.
[55]    R. Doc. 43-3 at 15; R. Doc. 66-16 at 2; R. Doc. 43-7 at 64.

he would not have to answer calls or respond to emails.[56]    The accommodation letter stated that plaintiff should contact the IDMU representative should he have any questions regarding the accommodations approved.[57]

Plaintiff did not communicate with his supervisor or with IDMU regarding any of the accommodations.[58]  He did not request an alteration to these approved accommodations.[59]  He never contacted his supervisor to identify tasks that could be delegated, sought additional time to perform work related tasks, requested additional remote workdays, or reorganized his schedule.[60]

On August 9, 2023, plaintiff's supervisor terminated his employment.[61] His supervisor cited plaintiff's failure to complete tasks on a timely basis and meet deadlines.[62]  Plaintiff filed suit, alleging that Prudential failed to provide him with reasonable accommodations regarding his ADHD

---

[56]    R. Doc. 43-3 at 15; R. Doc. 66-16 at 2; R. Doc. 43-7 at 64.
[57]    R. Doc. 43-3 at 16; R. Doc. 66-16 at 2; R. Doc. 43-7 at 64.
[58]    R. Doc. 43-3 at 16; R. Doc. 66-16 at 2.
[59]    R. Doc. 43-3 at 16; R. Doc. 66-16 at 2.
[60]    R. Doc. 43-3 at 16; R. Doc. 66-16 at 2.
[61]    R. Doc. 43-3 at 17; R. Doc. 66-16 at 2.
[62]    R. Doc. 43-3 at 17; R. Doc. 66-16 at 2; R. Doc. 43-4 at 212, 215.

disability and that Prudential terminated his employment because of his ADHD disability.[63]

## A. The ADA and the LEDL

Plaintiff alleges that defendant's actions violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Louisiana Employment Discrimination Law ("LEDL"), La. Rev. Stat. § 23:301*, et seq.*, by failing to provide reasonable accommodations and by terminating him because of his disability.[64]  For claims stemming from improper treatment of a disabled employee, the LEDL is modeled after federal law and should be construed in light of federal precedent. *See, e.g.*, *Smith v. Thurman Oils, Inc.*, 951 So.2d 359, 361 (La. App. 1 Cir. 2006) ("In interpreting Louisiana's employment discrimination laws, our courts have relied upon similar federal statutes and the interpreting federal jurisprudence.").  Here, the Court's analyses under the LEDL and the ADA are the same.  *See Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007) (applying the ADA's standard for disability discrimination to a claim asserted under the LEDL and ADA); *Leaumont v. City of Alexandria*, 582 F. App'x 407, 410–11 (5th Cir. 2014) (applying the same standard to a claim for disability discrimination under

---

[63]    R. Doc. 9 at 6.

[64]    *Id.*

the LEDL and ADA); *Sutherland v. Edison Chouest Offshore, Inc.*, 2020 WL 5436654, at *14 (E.D. La. Sept. 10, 2020) (citing *Barton v. Checkers Drive-In Restaurants, Inc.*, 2011 WL 1193061, at *3 (E.D. La. Mar. 28, 2011)) ("Louisiana's disability discrimination protections are based on the ADA, and the Court's analyses under the LEDL and the ADA are the same."); *Turner v. Bd. of Supervisors of Univ. of Louisiana Sys.*, 644 F. Supp. 3d 221, 230 (E.D. La. 2022), *aff'd*, 2023 WL 5092758 (5th Cir. Aug. 9, 2023) (quoting *Huber v. Blue Cross & Blue Shield of Fla., Inc.*, 2022 WL 1528564, at *5 (E.D. La. May 13, 2022)) (applying the same standard to failure to accommodate claims brought under LEDL and ADA).

### B. Failure to Accommodate

To recover on a failure to accommodate claim, a plaintiff must establish that "(1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Feist v. Louisiana, Dep't of Just., Off. of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (quoting 42 U.S.C. § 12112(b)(5)).

Reasonable accommodations are "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the

position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). Among other things, reasonable accommodations may include:

> job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9)(B). An employer is not required to provide the "best" accommodation or the employee's preferred accommodation. Instead, the employer must provide an accommodation that "is sufficient to meet the job-related needs of the individual being accommodated." *E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d 462, 471 (5th Cir. 2009) (quoting 29 C.F.R. § Pt. 1630, App. § 1630.9). An employer faced with a demand for reasonable accommodations may deny the request on the grounds that the accommodation would create an undue hardship. *See Riel v. Elec. Data Sys. Corp.*, 99 F.3d 678, 681–82 (5th Cir. 1996) (quoting 42 U.S.C. § 12112(b)(5)(A)).

"The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the individual with a disability." 29 C.F.R. § Pt. 1630, App. § 1630.9. Often,

this includes an "individual assessment of both the particular job at issue, and the specific physical or mental limitations of the particular individual in need of reasonable accommodation." *Id.* But the precise contours of the interactive process must be determined on a case-by-case basis. *See id.*; *see also Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999). An employer that "demonstrates good faith efforts" to engage in the interactive process and to make a reasonable accommodation is shielded from liability for compensatory and punitive damages. 42 U.S.C. § 1981a(a)(3). On the other hand, "[w]hen an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA." *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 316 (5th Cir. 2007) (quoting *Loulseged*, 178 F.3d at 736). "A party that fails to communicate, by way of initiation *or response*, may . . . be acting in bad faith." *Loulseged*, 178 F.3d at 738 (emphasis in original) (quoting *Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996)). If the breakdown of the interactive process is traceable to the employee rather than the employer, then the employer has not violated the ADA. *Equal Emp. Opportunity Comm'n v. Methodist Hosps. of Dallas*, 62 F.4th 938, 947 (5th Cir. 2023) (quoting *Loulseged*, 178 F.3d at 736).

Here, the Court finds that the undisputed facts reveal that plaintiff caused a breakdown in the interactive process when he failed to respond to Prudential's offer of accommodations.  A Court must "attempt to isolate the cause of the [interactive process's] breakdown and then assign responsibility."  *Loulseged*, 178 F.3d at 739 (quoting *Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996)).  An employer creates a breakdown when it "creates an objectively reasonable perception that the process is clearly at an end."  *Id.*  Here, after plaintiff requested reasonable accommodations, a representative from Prudential's IDMU requested additional information about plaintiff's disability, communicated with plaintiff about how his disability affects him and clarified his requested accommodations, and responded with somewhat modified versions of plaintiff's accommodations.  The letter offering accommodations expressly identified this as an "interactive process," and stated that Prudential "propose[s] the below accommodations which [it] believe[s] are reasonable and responsive to your needs."[65]  It stated that plaintiff should contact Prudential's IDMU representative if he has questions about the proposed accommodations after he had the chance to review them.[66]

---

[65]    R. Doc. 43-7 at 63.
[66]    *Id.* at 63–64.

Plaintiff stated that he never contacted the representative or his manager because he anticipated that a meeting would be scheduled and held by the company to discuss how the accommodations would be implemented.[67]   But there is no evidence in the record suggesting that plaintiff should have expected the company to schedule a meeting.  "When a breakdown in the interactive process 'is caused by the subjective spin the employee chooses to place on an employer's statements, only the employee can prevent the process from collapsing.'"  *Methodist Hosps. of Dallas*, 62 F.4th at 949 (quoting *Loulseged*, 178 F.3d at 739).  Prudential did not indicate that a meeting was forthcoming; the accommodations letter explicitly stated that plaintiff should reach out if he had questions. Prudential also did not create the perception that the interactive process was at an end.  It stated that it "propose[s]" the accommodations, and that was the last correspondence between the parties about the accommodations. Indeed, it was plaintiff who failed to respond to the IDMU representative or to act upon any of the offered accommodations by discussing them with his supervisor.  Therefore, plaintiff caused the breakdown in the interactive process, because of his lack of response.  *See id.* at 950 (holding that the plaintiff caused the breakdown when she was unresponsive to defendant's

---

[67]    R. Doc. 66-14 at 2.

proposed accommodation letters); *Gordon v. Acosta Sales & Mktg., Inc.*, 622 F. App'x 426, 430 (5th Cir. 2015) (holding that plaintiff caused the breakdown when he resigned rather than responding to defendant's representative's email or contact anyone else to explain why an alternative accommodation was necessary).

Because plaintiff caused the breakdown, the Court need not determine if the accommodations themselves were reasonable. *See Gordon*, 622 F. App'x at 430; *Methodist Hosps. of Dallas*, 62 F.4th at 949. It is sufficient that the accommodations offered are "facially reasonable proposals" that address each one of plaintiff's highlighted restrictions, which is a reasonable preliminary step to take. *See Methodist Hosps. of Dallas*, 62 F.4th at 949 (citing *Loulseged*, 178 F.3d at 736–37). Prudential engaged in a good faith, interactive process with plaintiff, and no reasonable jury could find that plaintiff was not responsible for the breakdown in the interactive process. Therefore, the Court must grant summary judgment as to plaintiff's reasonable accommodations claim.

## C. Disability Discrimination

The Fifth Circuit applies the *McDonnell Douglas* burden-shifting framework to employment disability discrimination ADA claims. *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 (5th Cir. 2019). Under *McDonnell Douglas*,

plaintiff carries the initial burden of establishing a *prima facie* claim of discrimination. *Id.* at 341. If he succeeds, the burden shifts to the defendant to articulate a "legitimate, non-discriminatory reason" for the action. *Id.* Finally, if defendant satisfies its burden, the burden shifts back to plaintiff to show pretext. *Id.* at 342.

To carry his initial burden of establishing a *prima facie* discrimination claim under the ADA, plaintiff must show "(1) he has a disability or was regarded as disabled; (2) he was qualified for the job; and (3) he was subject to an adverse employment decision because of his disability." *Id.* at 341 (citing *Williams v. J.B. Hunt Transp.*, 826 F.3d 806, 811 (5th Cir. 2016)). Defendant does not argue that plaintiff failed to establish a *prima facie* claim.[68]

Defendant puts forth multiple legitimate, non-discriminatory reasons why plaintiff was terminated. Plaintiff has a documented record of missing deadlines, despite extra oversight and repeated reminders, struggling to keep up with the volume of work, failing to respond in a consistent and timely manner, and exhibiting insufficient organizational and time management skills. Plaintiff was written up for these issues before he requested accommodations. *See Blackard v. Livingston Par. Sewer Dist.*, 2014 WL

---

[68]    R. Doc. 43-2 at 24–25.

199629, at *5 (M.D. La. Jan. 15, 2014) ("Plaintiff's excessive tardiness and absenteeism long pre-date his notice . . . to the Defendant that he is allegedly disabled."). The Court notes that although plaintiff may attribute his missed deadlines to his disability, that does not make his termination discriminatory under the ADA. Termination for performance issues, such as missed deadlines, may constitute a legitimate, nondiscriminatory reason. In *Pickett v. Texas Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013 (5th Cir. 2022), the Fifth Circuit distinguished between dismissing a student with ADHD "because her academic performance had slipped," and "because of animus." *Id.* at 1035. This requires a court to separate the possible symptoms of a disability with animus against the disability itself. In *Owens v. City of New York Dep't of Educ.*, 2022 WL 17844279 (2d Cir. Dec. 22, 2022), the Second Circuit stated that lateness, failure to follow procedures, and missed deadlines are legitimate, nondiscriminatory reasons to terminate a plaintiff with ADHD. *Id.* at *2. There, plaintiff's only evidence that supported a finding of prohibited discrimination was stray remarks made about her. *Id.*; *see also Alford v. Wonderland Montessori Acad., LLC*, 2024 WL 4354711, at *6 (N.D. Tex. Sept. 30, 2024) (noting that missing deadlines and failing to timely respond to emails was a nondiscriminatory reason that plaintiff, who had

ADHD, was terminated). Therefore, defendant's proffered reasons of plaintiff's performance issues are nondiscriminatory.

Further, nothing in the record suggests that defendant treated someone with a similar history to plaintiff more favorably, that it strayed from its standard practices or procedures in evaluating or terminating plaintiff, or that anyone made derogatory comments about plaintiff because of his disability. Additionally, plaintiff did not take advantage of the offered accommodations or engage further in the interactive process. *See Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 317 (5th Cir. 2007) (Defendant "has put forth a legitimate, nondiscriminatory reason for the employment action, which is that [plaintiff] refused reasonable accommodation."); *Jones v. United Parcel Serv., Inc.*, 307 F. App'x 864, 866 (5th Cir. 2009) (affirming the grant of summary judgment on plaintiff's discrimination claim following his termination when defendant offered plaintiff reasonable accommodations that plaintiff failed to avail himself of); *Haynes v. The Cmty. Hosp. of Brazosport*, 2011 WL 43315, at *5 (S.D. Tex. Jan. 5, 2011) (Defendant's "reason for terminating the plaintiff rests on her failure to accept the proffered accommodation," which "is a legitimate non-discriminatory basis for terminating the plaintiff's employment."). The

performance issues that defendant points to are legitimate, nondiscriminatory reasons for his termination and satisfy its burden.

Because Prudential showed legitimate, nondiscriminatory reasons for terminating plaintiff, plaintiff must "produce evidence from which a jury could conclude that the employer's articulated reason is pretextual." *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016). To show pretext, plaintiff must offer sufficient evidence to show that either "(1) the defendant's reason is not true," or "(2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic." *EEOC. v. LHC Group, Inc.*, 773 F.3d 688, 702 (5th Cir. 2014) (quoting *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)). Under the ADA, "discrimination need not be the sole reason for the adverse employment decision, so long as it actually plays a role in the employer's decision-making process and has a determinative influence on the outcome." *Id.* (cleaned up) (quoting *Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008)).

Plaintiff fails to rebut defendant's legitimate, nondiscriminatory reasons or to point to any evidence that suggests that his disability was a motivating factor in his termination. There is no evidence defendant's reasons were untrue. Plaintiff does not dispute years-long, documented

performance issues. Instead, he argues that if he had not been suffering from health limitations, he would not have been terminated, and he avers that his termination is partially due to Prudential's failure to provide reasonable accommodations. As discussed above, Prudential offered accommodations, and plaintiff failed to respond to or negotiate for different accommodations or to take advantage of the accommodations Prudential offered. Additionally, plaintiff had numerous timeliness and organizational issues before he raised issues about health limitations. He did not point to any evidence that defendant was motivated by prejudice against his disability. His bare-bones but-for argument fails to raise a genuine issue of material fact that his disability played a role in Prudential's decision-making process and that defendant's proffered reasons for his termination were pretextual. The Court must grant defendant's motion for summary judgment on this claim.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion for summary judgment.  The Court dismisses plaintiff's ADA and LEDL claims WITH PREJUDICE.

New Orleans, Louisiana, this __4th__ day of August, 2025.


_Sarah Vance_
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE